IN this cause,* upon the testament of Thomas Williamson, bearing date in june, 1787, whereof the words are:
«I give to my said daughter (A) the interest of four thousand «■pounds in the government funds, during her life ; and, at her «death, i give the interest of the above money, one fourth to «each of my grandchildren Sarah Locke, Elizabeth Clements, « Francis Clements, and John Clements ; and, at their decease, «the principal and interest to be disposed by them to their heirs, «in such proportions as they, by their wills, respectively, may « direct; and, in case of the death of my grandaughter Sarah « Cocke, without issue, i give her part to my grandaughter «Elizabeth Clements,’
the question debated by counsil was, whether the plaintiffs intestate Sarah, to whom Elizabeth Clements the daughter had released her right to the interest of one thousand, part of the four thousand pounds, mentioned in the bequest, (B) was entitled to the said one thousand pounds, principal money? and the court, premising, that the release by the daughter who con *339 fessedly Aims entitled to interest only during her life, to the former husband of the intestate and herself, is unimportant to this disquisition, stated these positions :
The first position : Thomas Williamson did intend his grandchildren NOT to have the PROPERTY of the money ; because,
first, the subject of the explicite gift to them, Avhich is the only gift to them, except the gift of a power to direct to Avhat proportions the heirs should succede, the energy whereof will in the sequel he defined, was interest only, the terms being £i giAre the INTEREST, of the above money, one fourth to each of my grandchildren
secondly, the property of the money is in terms devoted to the HElRS of the grandchildren, in such proportions however as these, by their wills, respectively, may direct ;
thirdly, the part of Sarah, that is, the part, whereof the interest Avas given to her, the testator, in case of her death, without issue, gave to his grandaughter Elizabeth Clements,
The second position : the term, £ heirs,’ which, in a devise or conveyance of land, is said to be a word of (C) limitation of estate, that is, to declare the quantity of estate in the land to be taken by the devisee or purchaser, although it may be sometimes, as in cases of contingent remainders, a Avord of purchase, that is, may designate the persons who shall take the laud,can, in a bequest of chaléis, bo understood only to indicate the takers, and, in this case, indicates them, namely, those Avhom the law hath appointed to succede to the heritable rights of one who died intestate, by characters infallible, insomuch, that, by a bequest to the heirs of A, the parties infilled may be demonstrated with no less certainty than if they had been described by the appellations children, parents, brothers and sisters, &c, successively of A $ and, by the term, £ heirs,’ in the bequest Avhere the testator named the grandaughter Sarah and referee! to her particularly, he intended children, which confined sense, as to her, is indubitably proved by the gift, in the event of her death without issue, that is, children then living, to another grandaughter.
The third position : words in a testament ought not to be rejected, or be rendered ineffectual, if they be significant, and may he interpreted in a sense which is not contrary to law. (D)
The fourth position: the sense of the terms,í at their dec cease,’ that is, at the decease of the grandchildren, £ the prin- £ cipal money and interest to be disposed by them to their heirs,5 unconnected Avith the preceding member of the paragraph,- is *340 defective, because among those terms is not any verb which goverueth, in the language of grammarians, or acteth upon, the words principal and interest; but the words, ‘ i give,’ ocouring before, are understood, in like manner as if they had been repeated after the word ‘ decease,’ and thus supply the seeming chasm in the sense, consistently with the intention of the testator, as will appear hereafter.
The fifth position : that by the term, ‘ disposed,’ is not understood. s given,’ implying a cower in the grandchildren to dis-pone the principal money to whom, as well as in what proportions, they pleased because that would contradict the testators declared will, that the grandchildren should not have the property of the principal money, but is to be understood < distributed ;’ impowering them, not to give the money, or to designate the donees but, to adjust the portions thereof which the donees, designated by the testator, should take.
One proper sense of the word ‘ disposed’ is distributed simply, as appeareth by these examples of writers in the language from which the word hath been adopted into our language :
Pompeius ex urbe p?-qfectus iter ad legiones hobebat quas a Oaesare acceptas in Apulia hibernorum causa, DISPO-SUERA rP. Caesar,’ V c’ V 1. Pompey went from the city to the legions, which, received from Caesar, he had DISPOSED, that is, DISTRIBUTED, in winter quarters in Apulia.
Scipio retention secum Laelium, dion caftivos obsidesque et praedarn ex consilio ejus DISPONERE T, satis, Spc. Romamimttit. Li'oii, V 26. Scipio, having retained with him Laehus, until, by his advice, he should DISPOSE, that is, DISTRIBUTE, the prisoners, hostages, and plunder, after dispatching these affairs, sends him to Rome.
DISPONERE diem is used by Tacitus, Suetonius, and others, to signify division of the day into portions for particular occupations devoted to each.
Opus et requiem pariter DISPONIMUS ambo. Persii, sat* 5. we both DISPOSE, that is, DISTRIBUTE, the same hours to labour and rest.
The sixth position : the meaning of the whole bequest is exhibited truly by this paraphrase, variant from the text only by supplement of the ellipsis and insertion of the synonyma embraced by crotchets : ‘ i give the interest of the above money, ‘one fourth to each of my grandchildren Sarah Cocke, Eliza- ‘ beth Clements, Francis Clements and John Clements, and, at 11 iheir decease, [i give] the principal and interest, to be DÍS- *341 < proportions as they, by their wills, respectively, may direct.’
Scholium: the comparison of adjudged cases, quoted by counsil for the plaintiff, to prove that a power to dispone a thing involveth a right to the thing, with the principal case, is altogether inept; for,
first, in the cases quoted, he, who had the disponing power, was, in explicit terms, devisee of the land or legatary of some other subject for a time ; in this case, the principal money was not, in explicit terms, bequeathed to the grandchildren, nor, if bequeathed to them at all, bequeathed otherwise than by implication from the words, ‘ at their decease the principal money ‘ and interest to be disposed by them and the question is, whether the power of the grandchildren to dispone the money, which was not bequeathed to them, but of which the interest only was bequeathed to them, implicated a right in the grandchildren to the money itself, and authorized arrogation of it to themselves? so that the argument from those quotations, proving, that a devise or bequest of a thing to one for a time, with a power to dispone it afterwards, transfereth to him the property, compared with the principal ease, where the proposition to be proved is, that a power in the grandchildren, to whom the interest, the use of money, for a time was bequeathed, to dis-pone that money afterwards to their heirs, involve;! a right to the money, is apetitio principii, the sophism to which a candid reasoner disdains to resort:
secondly, in the cases quoted, the power to dispone was general ; in the principal case, the disposition, which the grandchildren had power to make was special, ‘to their heirs,’ that is those whom the law appointed to succede to the inheritable property of the grandchildren ; so that the argument from the cases quoted, proving that one, who hath power to dispone a thing to whom he will, must, by implication, have a property in the thing, applied to the principal case, to prove that he who hath power to dispone a thing to persons particularly designated, must, by implication, have property in the thing, and consequently may dispone it to whom he will, is- a mistake of the question : nor is the case between (E) Shermcr and Richardson, on which the counsil for the plaintiff relied, an exception to what is here stated ; for the devisee there had power, not to dispone to her heirs only, but, to make whom she thought proper her heirs, which was equivalent to general power to dis-pone :
thirdly, in the cases quoted, the property was adjudged to be in him who had power to dispone, in order that the will of the testator might be fulfilled ; in the principal case, adjudication of *342 the property to be in the grandchildren, who had power to dis-pone, would, instead of fulfilling, defeat the will of the testator.
The seventh position : the heirs of every grandchild, by which heirs, in the case of the plaintiffs wife, the testator undoubtedly meaned children, will take, if his or her will direct not what proportions they shall have, one fourth part, in equal portions ; because when a subject is given to several, to he distributed among them discriminately or otherwise, at the election of him who is appointed to perforin that office,
first, the refusal or neglect of the distributor cannot injure the donees ; for he is a minister only, not an owner :
secondly, if he do not exercise the power, the praosunition is, he declined it, because he did not choose to distribute unequaly, in which case his function was unnecessary ; for distribution among associates ought natnraly to be equal, if the contrary do not appear :
thirdly, if the heir be single the distributor cannot act at all:
fourthly, all the donees, who were entitled to the whole subject of distribution, may, by mutual agreement, control the distributor, disaffirming and frustrating any partition equal or unequal by him, and therefore may prevent it.
The eighth position : the bequest of the principal money to the heirs of the grandchildren, or in other words, to those whom the law appointeth to succede to their inheritable property, was not contrary to law.
If the testator, for the phrasis, ‘heirs,’ (F) had substituted its periphrasis, this part of the bequest would have been read thus : ‘at their, my grandchildrens, decease, [i give] the princi- “ pal and interest to [those who wifi inherit their lands] in such ‘ proportions as they, [except my grandaughter Sarah,] by their “wills, may direct, and, in caso of the death of my gran- “ daughter Sarah Cocke, without issue, [without lineal succes- “ sors] i give her part to my graudaughter Elizabeth Clements, “ [singly not in a communion with her brethren.’]
That such was the will of the testator is believed tobo manifest, and that it was not contrary to any principle of law is likewise believed, because the events, upon which the bequest would become efficacious, must happen within the times during which rights by such a bequest may he in suspense : for the heirs, if any exist at all, will exist, of the grandaughters immediate^, and of the grandsons at the end of about nine months at farthest, after their deaths.
!f these positions he true, as they are thought by the court to be, the consequence unavoidable is a negative decision of the question, in the principal case before propounded ; and that the *343 plaintiffs wife Sarah could have disponed one fourth part of the money to her children, or their descendente only, and her sister, when she was living, could have disponed, and her brothers can dispone, the other three parts to their children, or to their descendente, and, in default of them, to their heir in the ascending line, or to their collateral heirs ; but to none oilier.'— and hence the corollary must be,
the decree reviewed is affirmed.
*338 (A) &c. refer to notes at the end of the case.
*343 NOTES.
(A) She was Elizabeth Clements.
(B) The plaintiff succedeth to her, if she were intitled, and is not accountable to her kindred.
(C) By a conveyance or a devise of land to Timothy,and to his heirs, the purchaser or devisee took an estate most ample, so that it was UNLIMITED, whereas, if the word,‘heirs’ had been omitted, and terms aequivalent had not been substituted, referring to some former act of conveyance, in one instance, or signifying the testators will, in the other instance, an estate LIMITED was taken ; yet, ‘heirs,’ in law vocabularies is a word of LIMITATION, this must be an «ynrgmtí. ‘heirs,’ is a word of LIMITATION, because it, or the aequi valent with it, was necessary to transfer an estate UNLIMITED, ‘heirs of the BODY,’ indeed are strictly words of limitation.
(D) By the decree of the county court, reversed by the high court of chancery, and now proposed to be restored, that the decree of the latter may consist with a decree of the supreme court, in another cause, the words in Thomas Williamsons testament, ‘and in case of the death of my graudaughter Sarah ‘ Cocke, without issue, i give her part to my graudaughter ‘Elizabeth Clements,’ were entirely rejected, significance of ‘ those words, ‘in case of the death of my grandaughter Sarah ‘ Cocke, without issue,’ in this sense : ‘the contingent gift, to ‘ Elizabeth of Sarahs part shall be effectual, when a failure of ‘ the latiera progeny shall happen, either at the time of her ‘ death, or at a more distant period,’ is undeniable, the words can have no third meaning.
About the end of last century, english judges would have understood that event to have been within the scope of the testators contemplation, by which he would have been thwarted, and. she who was the object of his beneficence, would have been disappointed, in a fond or a servile compliance with what those judges called a rule of law, that is, a rule of interpreto ¡ion commented by themselves, or coming to them bypraditiou from *344 •their predecessors, and in contradiction to the testators words, uninfluenced ‘by the RESPECT, ‘ which all men have agreed to pay to the WILL ‘of the dead.’
Succeding judges, ‘in the progress of their strug‘gle for the intention against a rigid unjust rule,’ would, as until lately was believed, have understood the other event to have been contemplated, according to the plane meaning of the words ; whereby the wish of a grandfather, and the hope of her whom he most iavoured of his offspring, might have been gratified, without violating any principle of law tritely so called, or contravening, except peradventure iu one instance, any cases adjudged, to be found in the term reports, transatlantic or cisatlantic, or other modern publications, of responso prudentum.
(E) ‘I am free to own, that, where a testators in‘tention is apparent to ME, cases must be STRONG, ‘ UNIFORM, and apply P( iINTEDLY, before they ‘will PREYALE to frustrate that intention by the president of the court of appeals : of which the converse is : ‘lam free to own, that, where a testators intention is apparent to ME, cases, which ‘ are STRONG, UNIFORM, and apply POINTEDLY, WILL ‘ PREYALE to FRUSTRATE that intention.’
Observations and questions :
1 This, although delivered in the first person, ‘i’ and ‘me,’ is supposed to have been the sentiment, unanimous sentiment, of the conclave ; because the report, corrected ‘from the ‘ notes of him’ who was praeses, doth not show that any were dissentient; because it is ‘declared to be the opinion of the court,’ that is, for any thing hinted to the contrary, the whole court; and because it seems then to have been settled, and to have become a rule of property.
2 Strength of a case, distinct from its uniformity and pointed application, is believed to be its ratiocination, cogent of assent to propositions intended to be verified.
3 By uniformity in the cases is understood, either a harmony of them with One another, or a symmorphosis, a likeness in form, in meaning, with that to which they were compared.— which ever be the sense, aptly may be here remembered these words of the president, delivering the opinion of himself and his assessors, in the case between Shermer and Shermers executor : ‘ several cases have been cited, but they seem *345 ‘ to verify the saying of a judge : “that, in disputes upon wills, “ cases seldom illucidate* the subject, which, depend- “ ing on the intention of the testator, to be collected “ from the will, and from the relative situation of the parties, “ ought to be decided upon the state and circumstances of each “ case,” to which i will add: that i have generaly observed, that * adjudged cases have more frequently been produced to disap- ‘ point, than to illustrate, the intention.’
Now : in the dispute between Godwin and his wife, plaintiffs, and these defendents, when the court of appeals, upon this will of Thomas Williamson, determined, that his grandchildren were entitled to the money, which by the bequest before recited they were empowered to dispone to their heirs, determined so upon authority of the cases cited, aud principaly, as hath been said, upon authority of the case between Shermer and Shermers executor:
was not ‘the intention APPARENT TO’ the sage president, and to every other member, that the grandchildren SHOULD NOT, but that their heirs, in some proportions or other, SHOULD, have the principal money? whether that intention was illegal, is not now the question ;
were the cases cited, in panoply complete, with all their armature, s > STRONG, whatever or wherever their vigor was, and the harmony of them with one another, or the symmorphosis, likeness in form, in meaning, of them with the principal case, such, that they PREVALED to FRUSTRATE that intention? do the six first paragraphs, that is all but one, of the courts opinion in the case upon Shermers will, apply to the case upon Williamsons will? if the strength of Shermers case, applied to the other, be in that part where some insects are armed with stings, and if it be potent there, doth it not oppugn ineluctably the reversal which it was adduced to authorize?
did the cases cited ‘ illucidate,’ elucidate, or dilucídate ‘the ‘subject’ of disquisition, and assist the judges to discover the POLAR STAR, which directed them in the ‘construction of the will, and guided the decision,’ so that it shone more brightly than it shone before ? men use the darkened lens of a telescope, when they contemplate the suns disc, or the faculae, or maculae, or other phaenomena, on the face of that luminary, that they may not be dazzled or blinded by the splendor of its rays, but use every optic aid, that the medium, through which opake bodies are viewed, may be pellucid as possible, some judges, when they propose to discover a testamentary polar star, condense, by confusing with a mist called authorities, the medium through which the object is confessedly to be dis *346 cerned, obscure its atmosphere with a soot called technical words, and leave certain people doubting whether the star, which the testators words indicated, defining it with such accuracy that an un-law-learned man, who would credit the information of his senses and hearken to the suggestions' of an unperverted understanding, would swear it could not be mistaken, was or was not the star, which should ‘ direct the ‘judges in the construction of the testators will,-’ — doubting, because law-illumined astronomers had, by the reXm skill in the art of interpretation, discovered, and had, by an irreversible and therefore infallible judicial sentence, declared, that the star, upon which ordinary observers were gazing, was as different and as distant from the star, ‘ which is to guide ‘ the judges decision’ as Mercury from Herschel. in truth, law-interpreters have deprived the STAR, intention, of POLARITY, rendering it planetic, erratic, so that they seem to verify the saying of a judge ‘ a will may be any ‘ thing, every thing, no thing.’
Did the case upon Shermers will,
giving the profits of his whole estate to his wife for her life ; impowering her to make whom she pleased her heir or heirs of one half;
giving that half, not to her heir, but, to whom she should think proper to make her heir or heirs ; in effect, giving to her immediately dominion, full dominion, of the half, so that she might have disponed it, to whom she pleased, when she pleased, for a disposition at any time would have been effectual, and how she pleased did this case apply POINTEDLY to the case upon Williamsons will,
giving, not the money, but, the interest of the money, to his grandchildren ;
not empowering them to make whom they pleased their heirs ;
giving the money, not to those whom the grandchildren should think proper to make their heirs, but, to those who by law would be made heirs of the grandchildren, refering apportionments of shares among the heirs to discretion of their respective ancestors; and is no't the case upon Shermers will, if it apply to the case upon Williamsons will, in any point, in point-blanc opposition to it?-
do not these words of the venerable president‘ he, John Sher- ‘ mer, does not give her,his wife, a power to dispose, ‘ but, to name the person or persons she might chuse to succede ‘ to her part, TO WHOM- the testator GIVES the money,’ and the reversal of the decree, in' Godwins case, upon Williamsons will, if this were founded on that, strike an ear, not the most *347 acute, with a habana, a dissonance in the cases ; did he, Tilomas Williamson, give to his grandchildren a power to name the persons who should succede to the money ; on the contrary, are not those successors, or rather proprietors of the principal money, named by himself; and did he give the money to those whom the grandchildren should chuso to succede ; on the contrary, did lie not give the money to those whom he chose to succede ?
I f the opinion in Ayíetts case be, as it is there called, a ‘ PRINCIPLE,’ so ‘ SETTLED that it had become a ROLE ‘ of PROPERTY,’ is not the converse of the opinion a ‘ PR1N- ‘ CIPLE’ too, and must it not ‘ become a RULE of PRÜPERrI Y,’ as well as its antitype.
If judges can form rales for interpreting wills of ‘testators, ‘ IGNORANT of the technical sense affixed to words ‘ by professional men’ — testators, unassisted by those professional men, ‘often when their wills are made in ex- ‘ treniity reduced to the necessity of resorting to any per-‘sou, however unskilfull, who may be at hand.’-if the judges can convert these rales into ‘PRINCIPLES, SETTLED RULES of PROPERTY,’ can declare, that against them, where the adjudged cases approving them are said to he STRONG, although riot a single reason, as in the cose of Rose and Barffelt, and other cases, is pretended iu justification of them, to be UNIFORM and. to apply POINTEDLY, terms not defined, nor perhaps defineable, intentions of testators, APPARENT intentions, WILL NOT PREVALE — may not judges ‘ mould testators wills into any forms, which ‘ whim, fancy, or worse passions, may suggest?’
When the testator is admitted to have intended one thing, is not to adjudge him to have intended another tiling, and that this shall PREVALE against that, the same as to adjudge that wliai IS his will IS NOT his will, and sufficient, when this is named interpretation, to justify a prosopopoeia of common sense hooting such jargon?
Further observations upon rules formed by judges, for interpretation of testaments, that is, for explanation of words iu them, so that they may he understood by those who did not understand them before :
judges, probably, if they had not been perplexed by rales juriiiiealy praescribed by themselves or their praedecessors, Wicud have expounded a testators words, unless they were terms in the sense winch odiormea, as well acquainted as ih«irse! ms with the language, aihibucc to them*, resorting to those *348 sources of invention, which circumstances, too many lor enumeration , too various for specification, suggest for investigating his intention :
—would have expounded his words, if they were terms of art, simple and unaequivocal, in the sense attributed to them by skilfull professors of the art;
—woul.s have expounded his words, if they were terms of art, but aequivocal, so as to be intelligible, in a demotic, popular, or in a technic, artificial sense, — in one of which the testament would have been valid, in the other void— would have expounded his words ill the f irmer sense, and rejected the latter ; prefering that to this, ut res magis valeat, by the benignity, quampereat, by the malignity, of the law — the law, which favours the praesumtion, that the testator intended what he could do, rather than that he intended whai he could not do.
When judges, who ‘ disclame all legislative power to ‘ change the law,’ pronounce, that a will shall not he performed, because the testator had not declared his meaning in language, which was prescribed by rules of interpretation, rules of construction, as they sometimes are called — (truly called so, for properly construction is building, taken for exposition by a metonymy, and wills are often, according to rules of construction, built, not interpreted, by english judges) — although his meaning was declared in language which could not be misunderstood — rules, of which he had never heard — rules, which although attempted to be dignified by their makers classing them with rules of law, are defective in a quality essential in the constitution of laws, having never been so promulged that they can he known by those who are not professionalists — do not judges, forming these rules, and adhaering to them so that cases where they have been recognized ‘will prevale against APPARENT intentions’ of testators, assume authority to fabricate types ‘ for moulding testators wills ?’ do they thus ‘ re‘gard the testators own words, and compare them with his circumstances, and the relative situation of the devisees?’ do they not oppose their rules of construction to the law, making *349 the commandment of it, THAT THE WILL OP THE TESTATOR ORDAINING WHAT IS LAWFULL SHALL BE PERFORMED, of none effect by their traditionary interpretations ? if this be not,, * what is, assumption of a legislative power’— power £ to change the law,’ to abolish the law ? ought such rules of interpretation, if it must be called interpretation, to £ become RULES of PROPERTY ?’ if english judges change some of their rules, as frequently they have done, will their apes, dictu nefas, be found among judges — in the latitude — of Virginia!
One would suppose, rules for interpretation of testaments should tend to illustrate intention, should be consisten?, with themselves, be simple.
But, as we are taught, £ adjudged cases,’ in which we find these rules,1 have more frequently been produced to ‘ disappoint than to illustrate the intention.’
Instead of consistency, £ apparent clashing of the cases ‘ relied upon,’ in some instances, where these rules have been applied, is confessed, and in numberless others may be shewn.
Instead of simplicity, judges, by the canonic art, skill in forming rules, for interpretation of wills have £ tied a gordian knot.’
Why gordian knot? the to# ov tm a¡iat>¡s c? the vinculum inextricabile, to which is here alluded, is said to have been serie vinculorum ita adstricta, ut unde nexus inciperet, quove se conderet, nec ratione, nec visu, percipi posset. now we learn, that the judges, tying this knot, were instigated by the £ spirit of the feudal system ;’ so that the judges, who have been since struggling,’ we are not told how long, ‘ since to untie it,’ and who possibly knew unde nexus inceperat, and therefore could have found one end of the cord with which the knot was tied, must have been clumsy, if they could not find, quo se condidit, the other end. the pellaean hero , if he had been so lucky as to discover the begining of the cord, with which the phrygian knot was tied, would have been more dexterous, and probably, by ravelling it, would have fulfilled an oracle, instead of eluding it, by the discission, this expedient, however, is commended: for we are informed,£ it Wr 102 ‘ would have been better if they, ENGLISH judges, had cut it, the knot, at once.’ yea verily? would it have been better? if so, why did not, why do not, Virginia judges imitate themacedomans example, since, ‘by the atnerican revolution, and ‘ some of our laws, we have happily got rid of the feudal system and the spirit of it in this part of the globe hath been exorcised ? they would have been, they will be, acquited of te *350 merity, which was ascribed to him, and might hare avoided, may still avoid, agonies which english judges suffer, in their‘ struggle for the intention against rigid unjust rules of law,’ that is, rules of interpretation.
The english structure of canons, rules for interpretation of testaments,’ ‘ unfortunately admitted,’ — unfortunately truly for all but those, who, like Demetrius and bis suit, ‘by ‘this craft have their wealth’ — a structure of rules for expounding .testaments, that is, fir ‘counteracting, ‘ defeating, intentions of testators’ (for to call it interpretation and exposition, if not irouicaly, must, he nonsense) a structure, agreed tó be an imp of toe feudal stock— may be resembled rather to the Cretan labyrinth, for expediting us from its maeanders, our Daedalus, who
Virg’--ipse dolos tecti ambagesque resolvit, Gaeca regens Jilo vestigia,----—
the general assembly shewed the clew, execrating, in our system of jurisprudence, every part formed of feudal materials, or fashioned in feudal style. How we shall profit by the indica^ tion may be augured by the case of Ayletts executor against
Aylett, and by the ® eulogy which no doubt was extremely delectable to him whom it blandished, and ‘ whose laborious researches on such occasions were plcas- ‘ ing to the court ’
(F) Let us suppose the testator to have used instead of the word, ‘ heirs,’ the syl abus of it, taken from the statute directing the course of descents, when the bequest would have been written thus : ‘at my daughters death,
‘i give the interest of the money to my grandchildren Sarah t Cocke, Elizabeth Clements, Francis Clements, and John • ‘ Clements, one fourth to each ; and at their decease,
‘ [i give] the principal and interest f to their children, or their ‘ descendents, to he disposed by them, in such proportions as ‘ they, by their wills, shall direct;
† ‘ if no children nor descendents of my graridau'ghter Sarah ‘ Cocke be, i give her part to my grandaughter Elizabeth Cle- ‘ ments ;
. ‘ if no children nor descendents of my other grandchildren ■‘be, [igive their parts of] the principal and interest, to their ‘ father,’ here supposed to be the same man. the testator pro *351 bably did not intend this : but such must have been the effect, if the father were living ;
-if tiie Culler be dead [igive their parts of] the principal ‘and interest to their mother/ also supposed to be the same woman, 4 brothers and sisters, and their desceudeuts or such of 4 them as there be in such proportions / and so forth.
That the testators words may be understood in this sense is incontestable, and that they ought, even in opposition to 4 cases 4 strong, uniform, applying pointedly/ to be understood in this the demotic sense, by which his intention may be fulfilled, rather than that his intention should be counteracted, defeated, by exposition of the word, 4 heirs/ in the technical sense, is---: hold here
■---give thy thoughts no tongue.

*352 These two cases ‘apply POINTEDLY.’ the resolutions of them are contradictory.
Stradling versus Styles, although adjudged, if indeed the case ever existed, long before Hose versus Batlett, as may be conjectured from divers considerations, doth not appear to have been cited in the argument of the latter case ; probably for these reasons ; first, the reports of master Scriblerus had not been published ; second, if they had been published, they would have been disregarded, not being authorized by the judges imprimatur ; last, the name of the supposed author is believed to be fictions, and to have been assumed by a certain COMMON SENSE, who, long a probationer, had not, in the time of George Croke, knight, reporter of Rose versus Bartlett, been able to become a licentiate, in Westminster hall, even of an ouster barristers degree.
« Thus settled’ (the principle in Shermers case) ‘ it has become a rule of property’ (that is a law, which the judges who assumed authority to ordain it, have, and their successors will have, equal authority to abrogate) ‘ which the court can- ‘ not depart from withou-.. disturbing MANY titles enjoyed un- « der this LONG ESTABLISHED PRINCIPLE.’
If the present judges shall not abrograte these rules and principles, their successors will not want logic to prove that those who can make, who can ESTABLISH, can defeat, can DEMOLISH, RULES of property, that is, LAWS.
If precedents be requisite, they are at hand, ‘ * FUR«NISHED,’ by the court of appeals : for example :
« The court cannot depart from a rule of property,’ by which they mean a judicial rule of interpretation, as it is explained by themselves, ‘ without disturbing titles.’ then they may depart from the rule, if it be a bad rule, and if departure from it will quiet more titles, than adhaesion to it will disturb.
Again for a more POINTED example.
« The judges after laying down the true rule, built upon in- « tention, unfortunately admitted that, if there be no words of < limitation the common law rule must prevale ; by which they « tied a gordian not, which they have since struggled to untie. « it would have been better if they had cut it at once.’
Now, with what was this knot tied ? with ‘ rules and in many ‘ of interpretation, rules of construction, principles, more places, «rules of property.’ « what are rules of property,’ but laws? who «tied the knot?’ judges, who formed the rules? judges, who «have struggled to untie the knot?’ judges, who ‘would have done better if they had cut it?* *353 judges, ‘at once / when? not before the knot wa,s tied by preceding judges, surely, what is the proper, instead of the metaphorical sense of ‘ tying, struggling to unite, cuting, the ‘knot?’ forming rules of interpretation, rules of construction, ‘principles, rules of property/ was ‘tying.’ endeavouring to change them was ‘ straggling to untie.’ declaring them to have been originaly contrary to law was ‘ cuting.’
Consequently the court of appeals authorized abrogation of rules for interpretation of testaments.
Here upon the concession of the court of appeals, that, for interpretation of wills, ‘ the rule built upon intention’ is the ‘true rale/ deserves to be remarked, if it were a true rule, it was a common law rule, if it were a common law rule, the rale ‘the judges unfortunately admitted to prevale against it/ is a false rule, and the proposition that it was ‘ the common law ‘rule,’ involves a contradiction.
‘ From the rale of property,’ the rule of construction, 4 set- ‘ tied by judges and chancellors/ in the case of Hose and Bartlett, and some other cases, in England, ‘ the court could not de‘part/ in the case, of notable celebrity* between Ayletts executor and Aylett, ‘without disturbing MANY titles, 4 enjoyed under this LONG ESTABLISHED PRINCIPLE.’ will obsequence of that glaringly false unjust principle, or deviation from it, think you, produce the most quietude or disturbance in this country? probabty the case hath frequently happened, 4 where a, testator, having both freehold and leasehold ‘lands, in a particular place, devised ALL his lands in that ‘ place,’ and been settled, without litigation, by the parties, who had not been informed of this ‘LONG ESTABLISHED 4 PRINCIPLE/according to his ‘apparent intention.’ and perhaps ‘MANY titles have been enjoyed peaceably and ‘ quietly under’ such settlements, we hear of a single instance, in this country, where any person had questioned, whether ‘only the freehold lands should pass by such a deviso / in other words, whether the postulate of Euclid, in fus elements, ‘that the whole is greater than its part,’ ought to be granted, if so, when Washingtons reports shall be, as they quickly will be, in the hands of every leguleius, indefatigable in his 4 researches’ after adjudged cases, and ambitious to deserve the ‘opin‘ ion, that what is not produced by him, in favour of the *354 £ side he advocates, does not exist,’ this case of Aylett, ‘‘for 1 which nothing can be said, but that in Ayletts will are < no words or circumstances to shew an intention, which £ do not appear in the case of Rose and Bartlett,’ instead of being a finis litium, will multiply them, and be as prolific as the fabulous hydra, or that species of the true hydra, called the polypus.

 Mr. Green here refers to 10, Sim. 491, Blewitt v. Roberts; 9 Sim. 161, Archibald v. Wright; 2 Keen, 54, Cooper v. Bowler, &c.

Marcus Pomponiua Mercdb;:i, huía ex oratwne Tiberiuni reprdu.'uOml, qfjinnanta Jlieio Capitoné, et esse latinum, et, si non esset, futurum, ‘ cede jam *348 inde menlitur, inquit, Capilo. tuenim Caesar, civitatem dare poles hominibm, verbis non potes.’ Sueton’ de illust’ grammat,’ 22. interpretation of words, which are not legal terms of art, is not peculiarly within the juridical sphere, and legal judges can, by their cases, precedents, authorities, rules of cons ruction, or whatever else they please to call them, no more ‘ESTABLISH for PRINCIPLES, and RULES of PROPERTY’ false interpretations of such words than a roman emperor, as he was told by honest Marcellus, with a generous boldness, although he might grant freedom of the city to foreigners and barbarians, could dentzate or naturalize a soloecism,- — a power, which the base Capita, with the servility of a cringing court favourite yielded.

 transpositions, by which the construction, in either sense, without the least change of meaning is more perspicuous.

 If in (his ease the intention appeared CLEAR, that the ‘ lease- W r 3(0 ‘ hold land should pass, the «port would g'ive a decision according to this principle, IN SUPPORT OF /THE INTENTION; but WE can discover ‘NO SUCH INTENTION,’ these words have been read by some people without STARING!